[L.A. No. 31367. Oct. 29, 1981.]

In re ELROY RICHARD GIDDENS on Disbarment.

**COUNSEL**

Laurence A. Young for Petitioner.

Herbert M. Rosenthal and Truitt A. Richey, Jr., for Respondent.

**OPINION**

**THE COURT.**—We review and will adopt the recommendation by the State Bar that petitioner Elroy R. Giddens be disbarred following his

conviction of a crime involving moral turpitude. (Bus. & Prof. Code, §§ 6101, 6102; Cal. Rules of Court, rule 951.)

On June 2, 1977, petitioner, pursuant to a written plea bargain, pleaded guilty to a federal indictment charging him with conspiring to distribute controlled substances (amphetamines) in violation of federal law. (21 U.S.C. § 841(a)(1).) He was sentenced to, and served, a term of two years imprisonment followed by a two-year special parole term.

Petitioner was initially suspended from the practice of law for non-payment of dues on November 18, 1976. On November 9, 1978, the judgment of conviction described above having become final, we placed petitioner on interim suspension and issued an order to show cause. Following his filing of a response, we referred the matter to the State Bar for a hearing and recommendation as to appropriate discipline.

After a hearing before the State Bar Court on May 15, 1980, the hearing panel recommended disbarment. The decision recites that culpability was clear and that on the record developed at the hearing alone two members of the panel recommended disbarment and one member favored actual suspension of three to five years. The panel then further considered the matter in light of a then pending recommendation of disbarment arising out of an unrelated disciplinary proceeding. Rule 571 of the Rules of Procedure of the State Bar Court permits the hearing panel, in making its determination of appropriate discipline, to consider a disciplinary recommendation or order made in a separate, formal disciplinary proceeding which is not yet final. In such cases the panel may make a recommendation as to discipline contingent upon the finality of discipline in the unrelated matter or it may state that its decision is made independently of the other proceeding. In the present case, following consideration of the separate proceeding, the panel unanimously recommended disbarment, and the review department of the State Bar Court thereafter unanimously adopted the hearing panel's recommendation of disbarment.

## FACTS

Before his admission to the bar, petitioner served in the United States Navy for four years, receiving an honorable discharge. Over the next few years he managed a finance company, enlisted in the army, served in Vietnam, and thereafter joined the Anaheim Police Department. Pe-

titioner studied law while employed as a police officer and was subsequently admitted to the practice of law on January 5, 1972.

In mid-1974, petitioner met a friend of a client who represented to petitioner that he purchased and sold turquoise in Arizona. Petitioner subsequently loaned money to this person ostensibly for the purpose of financing turquoise purchases with the understanding that the loan would be repaid with interest. At some point thereafter, in the words of the petitioner, "there arrived a time that I knew that he [the friend] was buying and selling amphetamines." Petitioner continued to supply funds and estimated at the hearing that he furnished between 30 and 40 percent of the money used to buy multi-100,000 lots of amphetamines during the period of his criminal involvement. Petitioner stated that he supplied approximately $20,000 over four to five months and realized therefrom a profit of $5,000 to $7,000.

In early 1975 petitioner became increasingly disturbed about his involvement in the scheme and decided to withdraw by closing his practice, selling his residence, and leaving California with his family. After touring the country, he settled in Texas where, in December 1976, he learned that he was under federal indictment. He then surrendered voluntarily.

After serving his prison term, petitioner returned to California and was employed by a mortgage company. He has not practiced law since 1975.

MITIGATION

At his State Bar Court hearing, petitioner called four witnesses who testified to his good character and reputation, legal abilities and devotion to his clients' interests. They opined that petitioner's criminal involvement was out of character and an isolated mistake. It was noted that his military record included the award of a Purple Heart and a Silver Star, and that he had fully cooperated with the authorities after his indictment.

Petitioner has received no prior discipline other than the separate proceeding mentioned above, which we reviewed in *Giddens* v. *State Bar* (1981) 28 Cal.3d 730 [170 Cal.Rptr. 812, 621 P.2d 851], wherein we held that petitioner was entitled to a hearing de novo because he had not been afforded an adequate opportunity to present his defense. In

view of that holding, we neither further discuss nor consider the circumstances underlying this earlier proceeding.

## DISCUSSION

Petitioner urges us to disregard the State Bar recommendation (1) because it was based in part on the disbarment recommendation in the separate proceeding which is not cognizable, and (2) because the recommendation is too severe in light of the mitigating factors.

While finding merit in petitioner's first contention because the prior proceeding has been remanded for a new hearing, we cannot ignore the fact that the hearing panel in the matter before us explicitly separated its recommendation into two components. The first, based on the record in this case alone, was the disbarment recommendation of two of the three panel members. The second, made following a consideration of the prior discipline, was the unanimous recommendation of disbarment. In fairness, it must be observed that the separation is somewhat clouded because the hearing transcript shows that the prior disciplinary matter was discussed by the panel immediately after the hearing on the present action and before closing statements. It thus appears that *both* recommendations were made *after* the panel had heard the evidence on the previous disciplinary proceedings. In addition, the review panel's recommendation may have been affected by the now invalid evidence.

Nonetheless, although we accord substantial weight to the recommendations of the State Bar, it is our duty to exercise independent judgment in determining the degree of discipline to be imposed. (*Tenner v. State Bar* (1980) 28 Cal.3d 202, 206-207 [168 Cal.Rptr. 333, 617 P.2d 486]; *Inniss v. State Bar* (1978) 20 Cal.3d 552, 558 [143 Cal.Rptr. 408, 573 P.2d 852].) Our review is expressly undertaken without consideration of the separate disciplinary matter.

Petitioner, stressing the mitigating circumstances above, argues that the recommended discipline is too severe. Prior decisions in similar situations have imposed a wide variety of discipline. In *In re Higbie* (1972) 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97], we suspended the petitioner for two years, with one year actual suspension followed by a year of probation, following his conviction of failure to pay a federal transfer tax on a marijuana sale. Mitigating factors included no prior discipline after a long period in practice, good reputation, and motives not of personal enrichment but of assistance to a friend, turned informer, who

then actively solicited the petitioner's further criminal participation. Similarly, in *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477], we imposed a three-year suspension with two years' actual suspension and one year probation, following a guilty plea to a charge of possession of marijuana for sale. Again, no pecuniary gain was involved, and the petitioner had a good record and was assisting a friend in transporting marijuana.

In *In re Kreamer* (1975) 14 Cal.3d 524 [121 Cal.Rptr. 600, 535 P.2d 728], we stayed a three-year suspension and placed an attorney on probation for the same period, after his conviction of illegal possession of marijuana and possession with intent to distribute. In *Kreamer*, the petitioner had a good record, had withdrawn from the practice of law before engaging in the criminal conduct, and had become involved in distributing marijuana when a domestic financial crisis developed. There was substantial evidence of rehabilitation, including a successful course of psychological counseling.

In *In re Capriola* (Bar. Misc. No. 3726) we disbarred a former prosecutor after his conviction for importing marijuana and attempted importation, upon a showing that he had been an active leader in the importation scheme and was motivated by personal gain.

We have repeatedly described the purpose of disciplinary proceedings not as punishment of the practitioner, but protection of the public, the courts, and the profession. (*Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186]; *In re Cohen* (1974) 11 Cal.3d 935, 944 [114 Cal.Rptr. 611, 523 P.2d 651].) "In the final analysis, the discipline to be imposed must be a function of the balancing of relevant factors including mitigating circumstances." (*Codiga, supra*, at p. 796.)

Several factors in the case before us lead us to the conclusion that the recommended sanction is appropriate. Petitioner could offer no explanation for his conduct. He suffered neither from financial hardship, drug addiction, alcohol dependency, nor emotional distress at the time of his commission of the crime. His criminal participation extended over several months and involved several transactions. When petitioner left California he was aware that the drug distribution scheme was continuing, but took no steps to terminate it, to surrender himself, or to inform law enforcement authorities about the illegal activity until after the indictment had been filed. In response to a question posed at the hearing regarding his failure to notify the authorities or to

extricate himself from the distribution scheme at an earlier time, petitioner replied "I really don't have an answer to that. I don't know. It is a lousy answer."

The primary evidence presented in mitigation was testimony as to petitioner's good character. However, character testimony alone does not establish the necessary rehabilitation (*In re Petty* (1981) 29 Cal.3d, 356, 362 [173 Cal.Rptr. 461, 627 P.2d 191]), particularly when no motivation is offered for the breach in the prior pattern of good behavior.

If anything, the assertion that petitioner's criminal activity was out of character reinforces our conclusion that disbarment with a subsequent opportunity to obtain reinstatement is the appropriate discipline. "[E]vidence of any rehabilitation will be more persuasive if offered during any reinstatement proceedings after disbarment. At that time [petitioner] may be able to show by sustained exemplary conduct over an extended period of time that [he has] reattained the standard of fitness to practice law." (*In re Petty, supra*, 29 Cal.3d, at p. 362.) The lack of any extenuating circumstances surrounding the misconduct convinces us that further proof is needed of the requisite "standard of fitness" during a period when petitioner is neither on parole (which apparently terminated in February 1981) nor under supervision of the bar.

Accordingly, it is ordered that Elroy Richard Giddens be disbarred from the practice of law in this state.