[L.A. No. 31642. July 14, 1983.]

RICHARD N. RIMEL, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## Counsel

Joe A. Dickerson for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Ellen Pansky for Respondent.

## Opinion

**THE COURT.**—In this proceeding, we review and will accept the State Bar's recommendation that petitioner, Richard N. Rimel, be disbarred for misappropriation of funds and other misconduct.

Petitioner was admitted to the practice of law in California on June 7, 1965. He has no record of prior discipline. The State Bar found that petitioner violated his oath and duties as an attorney and misappropriated clients' funds. (Bus. & Prof. Code, §§ 6103, 6106.) The State Bar also found that petitioner violated various rules of professional conduct by failing to maintain adequate safeguards in his dealings with a client, to act com-

petently on behalf of a client, and to preserve and segregate a client's funds (see rules 5-101, 6-101, 8-101, Rules Prof. Conduct).

These disciplinary proceedings result from two separate matters occurring in 1978 and 1979. The facts are not in dispute.

### 1. *The S. Matter*

In 1978, Richard and Patricia S. (the S.'s) retained petitioner to wind up their construction business. Specifically, petitioner was directed to collect the accounts, pay the debts, and represent his clients in any resulting litigation. To this end, they turned over to petitioner funds aggregating $112,359. Instead of representing his clients as they requested, petitioner misappropriated over $47,000 of this money, which he used to shore up his own troubled financial condition. Petitioner also allowed two default judgments to be taken against the S.'s and failed to pay $12,000 in taxes on their behalf, resulting in further penalties to his clients. Throughout this period, petitioner misled the S.'s about the status of their affairs, issued checks on insufficient funds, and failed to keep their money in a separate trust account.

Petitioner also entered into several business transactions with the S.'s. On one occasion, he was given $10,000 to purchase gold. He never made the purchase, however, and instead used the money for his own purposes. The S.'s also made a $10,000 personal loan to petitioner, which was to be repaid within the week. Petitioner still has not repaid the loan. In both transactions, petitioner failed to reduce the terms to writing, to give the S.'s an opportunity to obtain outside counsel, or to secure their consent to these irregularities. Petitioner has never repaid any of the money taken from his clients.

### 2. *The D. Matter*

The other charges stem from a separate incident which occurred in 1979. Petitioner's secretary, Beth D., asked that he collect $13,748 for her from an escrow fund while she was away on business. Petitioner collected the money, but did not dispose of it as directed. Instead, he took $11,748 from the fund and used it for his own purposes. Petitioner has never repaid any of this money.

### 3. *Discussion*

After a two-day hearing, the bar's hearing panel recommended that petitioner be suspended for three years, but that suspension be stayed pending a three-year conditional probation with a one-year actual suspension. The

bar's review department concluded, however, that a mere suspension inadequately protected the public and recommended that petitioner be disbarred.

■ Petitioner concedes that his misconduct warrants discipline, the sole question being the nature and extent thereof. Initially, petitioner urges that great weight be given to the hearing panel's findings and recommendations. ■ However, we have held that the review department's recommendations regarding discipline must be given greater weight than those of the hearing panel. (*Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35].) Of course, the ultimate decision remains with us. (*Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 917 [180 Cal.Rptr. 831, 640 P.2d 1106].)

■ Determination of discipline turns upon several considerations, including the protection of the public, the promotion of confidence in the legal profession, and the maintenance of professional standards. (*Garlow, supra,* at p. 917.) Petitioner bears the burden of demonstrating that, in light of these objectives, the recommendation of the review department is erroneous. (*In re Petty* (1981) 29 Cal.3d 356, 360 [173 Cal.Rptr. 461, 627 P.2d 191].)

■ It is obvious that petitioner's misconduct detracts from public confidence in the legal profession and the maintenance of professional standards. (See *Ambrose* v. *State Bar* (1982) 31 Cal.3d 184, 192-193 [181 Cal.Rptr. 903, 643 P.2d 486].) With respect to the separate, equally important question of whether the public would be protected adequately by less severe discipline, we focus upon the likelihood that petitioner will repeat his misconduct.

One indicator of future conduct is the nature of the offenses petitioner has already committed. In *Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 579 [119 Cal.Rptr. 335, 531 P.2d 1119], we disbarred an attorney whose acts of misappropriation demonstrated that he consistently chose to place his own financial interests above those of his clients. Disbarment was imposed despite mitigating factors, and despite the fact that (as in the present case) a less severe recommendation was made by the hearing panel. We found that under such circumstances the attorney's continued practice placed the public at risk of similar transgressions in the future.

Petitioner's misconduct demonstrates the same selfish disregard for his clients as that disclosed in *Tomlinson*. Petitioner, because of his own financial difficulties, misappropriated very large sums of money from clients who, he admits, were on the verge of bankruptcy. The nature of this mis-

conduct strongly indicates that his continued practice would place the public at jeopardy, for petitioner's financial situation evidently has not improved noticeably from the time of his original misconduct. Nor does the record disclose that his standards of rectitude have risen.

Other characteristics of petitioner's misconduct indicate that his continued practice would increase the risk of repetition. First, the offenses were inextricably interwoven with the practice of law (*In re Petty, supra,* 29 Cal.3d at p. 360), a factor which suggests that it would be unwise to put petitioner in the same circumstances that led to his misconduct. Second, the nature of his offenses indicates a calculated course of misconduct likely to manifest itself in future transgressions. (*In re Lyons* (1975) 15 Cal.3d 322, 326 [124 Cal.Rptr. 171, 540 P.2d 11].) Third, it is significant that petitioner violated important standards of conduct in addition to misappropriation. Among other things, he issued checks on insufficient funds (*Tomlinson* v. *State Bar, supra,* 13 Cal.3d at p. 577), commingled funds (*Jackson* v. *State Bar* (1975) 15 Cal.3d 372, 382 [124 Cal.Rptr. 185, 540 P.2d 25]), and abandoned his clients (*Selznick* v. *State Bar* (1976) 16 Cal.3d 704, 708-709 [129 Cal.Rptr. 108, 547 P.2d 1388]). This varied misconduct demonstrates a callous and unacceptable disregard for the interests of petitioner's clients.

Petitioner offers little in the way of mitigating circumstances. The fact that he has suffered no prior discipline ordinarily is important. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) Yet, while petitioner admits he has broken some technical rules, he does not acknowledge that his actions involved moral turpitude. His failure to appreciate the gravity of his acts is disturbing and may indicate petitioner's willingness to repeat his misconduct. (See *Jackson* v. *State Bar, supra,* 15 Cal.3d at p. 382.)

In the absence of strong mitigating circumstances, the penalty for repeated incidents of misappropriation is disbarment. (*In re Lyons, supra,* 15 Cal.3d at p. 326.) Petitioner offers no compelling mitigating circumstances. Rather, his past actions indicate that any lesser discipline would create an unacceptable risk to the public. Accordingly, we adopt the State Bar's recommmendation that petitioner be disbarred.

It is therefore ordered that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. It is also ordered that he comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.

**MOSK, J.**—I dissent because I believe the discipline to be too severe under the circumstances of this case.

The petitioner has been described by a superior court judge as a "skilled, brilliant and honorable lawyer." He has not attempted to avoid his liability for the events involved herein, but has properly raised a question concerning the extent of punishment that is appropriate.

The activities for which petitioner is being disciplined did not involve the active practice of law. The so-called victims were in effect joint venturers with him in highly speculative business investments. They, as well as this petitioner, sought the pot of gold at the end of a rainbow—and unfortunately for all of them, the pot was a mirage.

It would have been advisable at the outset for petitioner to have instructed his coinvestors to seek independent legal advice. But when all are jointly pursuing the anticipated fabulous riches just over the horizon, the lawyer's omission does not merit the ultimate punishment of disbarment when he did not benefit from the transactions but has been, like the others, wiped out financially.

My opinion is that some actual suspension plus a substantial period of probation would be preferable discipline.